ROSARIO BIANCHI ROSAFA, Plaintiff and Appellee, v. MANUEL V. DOMENECH, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 6051.   Argued April 28, 1933.—Decided June 26, 1934.

Benjamin J. Horton, Attorney General, (Charles E. Winter on the brief) and M. Rodríguez Serra, Assistant Attorney General, for appellant.   Frank Martínez and Frank Bianchi for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

This case is connected with the appeals numbers 6100 and 6101 which we have decided today. It differs therefrom in

that the taxpayer herein did not render as in the others any original return whatsoever. However, upon an investigation being practiced by the Treasurer, the taxpayer, through her husband, voluntarily signed, without objection, on May 5, 1920, the return which served as basis for the Treasurer to assess the tax involved.

The facts were submitted to the trial court by a stipulation from which we transcribe the following:

"9. On August 9, 1922 the plaintiff acknowledged receipt from the Treasurer of Puerto Rico of the notice of the assessment of the tax made on July 22, 1922, and of the date of payment thereof. In her acknowledgment the plaintiff claimed that said tax had been paid by her husband, and asked for an explanation. On August 9, 1922 the taxpayer was told that the Department had practiced, through an inspector, an investigation of the transactions of the firm 'Succrs. of Bianchi' of which she was a partner, and had found out that the taxpayer had received a share amounting to $86,799.88 from the profits distributed by said firm in the year 1917; and that the return on which said tax was assessed had been prepared *ex officio* by the Treasury Department and had been sworn and subscribed without protest by her husband, Mr. Miguel Esteves, in her name and representation.

"10. Subsequently to the dates indicated in the preceding averment, payment was demanded from the plaintiff, particulars being given to her of the surcharges and interests which, together with the tax, amounted to $3,400.23.

"11. After February 21, 1923 the plaintiff paid no attention to different demands for payment of the tax, surcharges and interests, and used the professional services of Cayetano Coll y Cuchí, Esq., who prayed, in the name of the plaintiff, for an investigation of the case or if not that the same be submitted to the Board of Review and Equalization. Later on the plaintiff used the services of Mr. José A. Fábregas to have the investigation repeated and the action for collection stayed.

"12. In July, 1927 the plaintiff appealed to the Board of Review and Equalization, averring in said appeal that the income tax assessed on the plaintiff was barred according to law.

"13. On March 11, 1930 the secretary of the Board of Review and Equalization notified the plaintiff that said appeal could not be allowed for it had been filed out of time.

"14. In June, 1930, the Treasurer of Puerto Rico attached real property of the plaintiff, in the name of The People of Puerto Rico, which would have been sold at auction if the tax was not paid, for which reason the plaintiff had to pay the sum of $3,207.76, under protest plus $3,299.72 as surcharges and interests, according to receipt No. 101.''

As may be seen, notice was given to and payment demanded from the taxpayer within the period of five years beginning on May 5, 1920, it does not appear however that the proceedings to collect were commenced either by distraint or judicial proceedings within that period. The first attachment of which we have notice according to the stipulation, was levied on June, 1930, namely, ten years after the return was filed in the Treasury Department by the taxpayer's representative.

The Treasurer maintains in his brief that there are no grounds in this case to invoke prescription according to the law of Puerto Rico, which in his opinion is the law of the case. He admits that the tax was assessed according to the Federal Income Tax Law of 1916, but argues that no limit was fixed therein for the collection of the tax and that inasmuch as it was repealed by section 77 of Act No. 80 of 1919, Session Laws, p. 670, the subsequent laws of Congress on the matter are not applicable, but those of the Legislature of Puerto Rico.

In our opinion such ulterior laws of Congress are in force as contain provisions applicable to the Act by virtue of which the tax was assessed. In accordance with them, once the return is filed and the tax is assessed by the Treasurer, he should collect the same by judicial action or by distraint proceedings within the period of six years and he did not do so. On this subject, the Supreme Court of the United States says:

"The principal question presented here, and the only one we need consider, is whether the suit, having been brought more than six years after the assessment, was barred by the provisions of section 278 quoted below.

" '(a) In the case . . . of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

. . . . . . . . . . . . . . . . .

" '(d) Where the assessment . . . has been made (whether before or after the enactment of this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, . . . . '  U. S. C. Supp., Title 26, sections 1058, 1061.

"In accordance with the claim of the government the court below held that there was a failure to file a return within the meaning of paragraph (a). See also *Updike* v. *United States,* 8 F. (2d) 913. We assume without deciding the correctness of that view and consider the case accordingly.

"The government contends—(1) that section 278(d) relates only to procedings to collect taxes *qua* taxes, and not to suits in equity to recover 'trust funds,' and that the present suit is of the latter character; but (2) that the present case is not within the provisions of that section even if a suit against the stockholders be controlled by the same rule as a proceeding against the corporation itself.

"   .   .   .   .   .   .   .

"*Second.*—It follows that if by section 278(d) the period of limitation had run in favor of the corporation, it had run in favor of the transferees. The contention of the government that the section does not apply under the facts of the present case, depends upon the meaning of the phrase which we have italicized: 'Where the assessment . . . has been made . . . *within the statutory period of limitation properly applicable thereto,* such tax may be collected . . . by a proceeding in court . . . but only if begun (1) within six years after the assessment of the tax . . . '  The argument, in effect, is this: In 1920 when the assessment was made, there was, and had been, no provision of law which in any form limited the time for assessing or collecting taxes, and, therefore, an assessment in 1920 of 1917 taxes could not fulfil the requirements of section 278(d), because, in that view, there was no 'statutory period of limitation properly applicable thereto'; and, assuming the applicability of statutes passed after 1920, the provision in these statutes is that the assessment may be made 'at any time', and that is not a period of limitation within the meaning of section 278(d), for the

word 'period' connotes a stated interval of time commonly thought of in terms of years, months and days.

"The clear intent of section 278, as applied to the facts of the present case, was to designate the extent of time for the enforcement of the tax liability. Where, in a 'no return' case, an assessment, which, under paragraph (a), may be made at any time, has in fact been made, a proceeding to collect must be begun within six years thereafter; but when there has been no assessment, the proceeding may be begun at any time. In the present case there was an assessment, and it would not be doubted that the suit was barred at the expiration of the six-year period of limitation, unless for the presence of the words italicized above. Have these words the effect of averting the bar? We think not. An actual assessment having been made, it must be assumed that the government was in possession of the facts which gave rise to the liability upon which the assessment was predicated. In such case to allow an indefinite time for proceeding to collect the tax would be out of harmony with the obvious policy of the act to promote repose by fixing a definite period after assessment within which suits and proceedings for the collection of taxes must be brought.

"In the light of that policy, it seems reasonably clear that the saving clause, 'within the statutory period of limitation properly applicable thereto,'—was inserted solely for the protection of the tax payer—that is to say, in order to preclude collection of the tax even within six years after the assessment, if that assessment, when made, was barred by the applicable statutory limitation. This conclusion is confirmed, if confirmation be necessary, by the provisions of paragraph (a), which clearly contemplate that the six-year period shall apply, except where the proceeding to collect is brought 'without assessment,' in which event it may be brought 'at any time.'

"It may be that the saving clause was not strictly necessary, but was inserted from excessive care to put the right of the taxpayer beyond dispute. In any event, we think this is the fair interpretation of the clause, and the one which must be accepted, especially in view of the rule which requires taxing acts, including provisions of limitation embodied therein, to be construed liberally in favor of the taxpayer. *Bowers* v. *N. Y. & Albany Co.*, 273 U. S. 346, 349.

"This disposes of the case and it becomes unnecessary to determine whether the phrase, 'at any time,' imports a 'period of limitation,' or to consider other questions presented in argument." *United States* v. *Updike*, 281 U. S. 489, 491, 494.

The same conclusion would have been reached by following the same reasoning, even though we applied only the acts of Puerto Rico invoked by the appellant Treasurer, to wit: Act No. 59 of 1917, No. 80 of 1919, No. 43 of 1921, and No. 74 of 1925, especially in view of the provision in Section 61 of the last one, to wit:

"Section 61.—(a) In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

"

"(c) Where the assessment of the tax is made within the period prescribed in section 60 or in this section, such tax may be collected by distraint or by a proceeding in court, begun within six years after the assessment of the tax. Nothing in this Act shall be construed as preventing the beginning, without assessment, of a proceeding in court for the collection of the tax at any time before the expiration of the period within which an assessment may be made."

Act No. 74 of 1925, Sess. Laws, p. 522.

Once the return is rendered, as it was in this case, and the assessment made by the Treasurer, a situation differing from that in a 'no return' case is created. There was something definite on which it was necessary to act. The collection could not be indefinitely postponed.

The appellant finally maintains that it being expressly acknowledged in the stipulation that the steps to collect taken by the Government were stayed at the request of the taxpayer and never for an indefinite time, the taxpayer is estopped from invoking prescription in her favor.

The argument sounds fair, but the construction of revenue laws is involved and the Treasurer's contention finds no support in the decisions. A stipulation in writing was necessary, and it does not exist in this case.

See what Klein says in his work Federal Income Taxation, Par. 41:17 (f) p. 1458:

"*Implied Waiver.*—Despite the language of the statutes requiring that the extension of the statutory period of limitation must be 'consented' to in writing by the taxpayer, thereby seemingly requiring an *express* waiver, the Department has in some cases attempted to sustain an assessment made after the expiration of the statutory period on the ground that the taxpayer has, by implication, waived the benefit of the statute. The courts, however, have rejected the Department's contentions, both in a case where its claim was founded on the filing of a bond in connection with a claim for abatement (of 1918 taxes) and where it was founded on a claim for credit made by the taxpayer on the ground of an alleged overpayment of taxes (for 1918), the taxpayer being aware that under the then practice of the Department the effect of such claim would be to suspend action by the Department for the collection of taxes due for prior years (1916 and 1917).''

And in Par. 41:17 (*o*) pp. 1468, 1469:

'' . . . . 'cannot be considered a waiver because it has been consistently held by the courts of this land that waiver is the intentional relinquishment of a known right with both the acknowledgment of its existence and an intention to relinquish it (citing cases); and there is no evidence in this appeal to show any such intention on the part of the taxpayer.' ''

For the foregoing reasons, the appeal must be dismissed and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.